UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| **FOREMOST INSURANCE COMPANY,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| v. ) | Case No. 11-CV-0433-CVE-PJC |
| ) | |
| **THE ESTATE OF JOE YORK,** ) | |
| **TOMMIE JO PIOTROWSKI, and** ) | |
| **TAMARA O'BRIEN, as Parent and** ) | |
| **Next Friend of Coder Howard, deceased,** ) | |
| ) | |
| **Defendants.** ) | |

## OPINION AND ORDER

Now before the Court is Plaintiff's Motion for Summary Judgment and Supporting Brief (Dkt. # 34). This is an insurance coverage dispute arising out of the death of Coder Howard, a deceased minor.[1] Plaintiff Foremost Insurance Company (Foremost) argues that Howard "regularly resided" at Joe York's and Tommie Jo Piotrowski's home in Sand Springs, Oklahoma, and Foremost asserts that it has no duty to defend or indemnify the Estate of Joe York (the Estate) or Piotrowski against claims brought by Howard's mother, Tamara O'Brien, concerning Howard's death from an overdose of medication. O'Brien responds that the there is a genuine dispute as to a material fact precluding summary judgment, because she claims that Howard lived with her at the time of his death and that Howard did not "regularly reside" with York and Piotrowski.

---

[1]     The deceased is referred to as "Coder Howard," "Coder Vance," and "Coder Vance-Howard" in the documents submitted by the parties. To maintain consistency with the case caption and the parties' briefing, the Court will refer to the deceased as "Coder Howard."

**I.**

Foremost issued a homeowner's insurance policy to Joe York, and the policy was in effect from April 22, 2007 to April 22, 2008.  Dkt. # 34-5, at 1.  The residence covered by the policy was located at 15906 West Haskell Street in Sand Springs.  The policy provided personal liability coverage of $100,000 and medical payment coverage of $1,000.  However, Foremost "will not pay for **bodily injury** or **property damage** . . . sustained by any person who regularly resides on your **premises**," and this exclusion applies to personal liability and medical payment coverage.  Dkt. # 34-1, at 16.  The policy does not define "regularly resides."

The parties do not dispute that Howard died from an overdose of medication on September 7, 2007, but they agree on few other facts.  The evidence establishes that Howard resided with York and Piotrowski for some period of time before his death.  Records from Sand Springs Public Schools show that, on August 18, 2006, Piotrowski submitted an Affidavit of Residence stating that Howard would be living with her on a permanent basis, and she sought to enroll Howard in Sand Springs Public Schools.  Dkt. # 34-4, at 1.  Piotrowski listed her address as 15906 West Haskell Street in Sand Springs.  The custodial parent was identified as Tamara O'Brien, and O'Brien lived in Tahlequah, Oklahoma.  Id.  On August 11, 2006, O'Brien signed a letter stating that she gave her consent for Howard to attend school in Sand Springs.  Howard remained enrolled in Sand Springs Public Schools until he died on September 7, 2007.  Attendance records show that he was enrolled in school for the 2007-08 school year, and he attended school in Sand Springs the week of his death.  Dkt. # 34-9, at 5.  Piotrowski also requested to become the payee for Howard's Social Security supplemental income benefits.  Dkt. # 34-12, at 1.  Piotrowski's request to the Social Security

Administration states that Howard would reside with her at 15906 West Haskell Street, and Howard's mother lived at an unknown address and was not interested in Howard. Id.

After Howard's death, the Oklahoma Department of Human Services (DHS) opened an investigation. The investigation report states that Howard was living with York and Piotrowski on September 7, 2007. Dkt. # 38-1, at 3. DHS had previous involvement with O'Brien in January 2007, and Howard was not living with her at that time. Id. During the week of Howard's death, O'Brien was pregnant and she was supposed to remain at St. John Medical Center due to a risk of premature birth. Id. Instead, she left St. John and checked in at a hospital operated by Oklahoma State University. O'Brien left that hospital in the middle of the night and did not receive an official discharge from the hospital. Id. After leaving the hospital, it appears that O'Brien went to York's house in Sand Springs, and she was present when Howard was found dead at 6:45 a.m. Id. The Osage County Sheriff's Office also investigated Howard's death and listed his permanent address as 15960 West Haskell Street in Sand Springs. Piotrowski told the investigating officer that some of her prescription medication was missing, and that she had overheard Howard say that he thought his girlfriend was pregnant and "he might as well kill himself because he would not know what to do." Dkt. # 38-3, at 4. The Office of the Chief Medical Examiner conducted an autopsy, and it listed Howard's permanent address as 15960 West Haskell Street in Sand Springs. Dkt. # 35-4.

O'Brien has submitted an affidavit presenting a different version of the events leading up to Howard's death. O'Brien states that Howard often lived with other relatives but that she maintained full legal custody of him during his lifetime. Dkt. # 35-1, at 1. She states that Howard lived with York during August 2007, but that she removed him from York's home on September 1, 2007 and returned with Howard to her home in Tahlequah. Id. at 2. She claims that she took Howard to

3

York's home on September 7, 2007 to retrieve some of Howard's personal items, and Howard died after "consum[ing] a combination of the narcotics that were accessible and available in [York's] home." Id. She denies that Howard was attending school in Sand Springs as of September 7, 2007, and she states that she intended to enroll him in school in Tahlequah. Id.

O'Brien filed a lawsuit against York[2] and Piotrowski in Osage County District Court alleging that they were negligent in allowing Howard to access prescription medication. Dkt. # 34-3. O'Brien's original petition did not allege any claims against Foremost. On July 12, 2011, Foremost filed this case against the Estate, Piotrowski, and O'Brien seeking a declaratory judgment that it has no obligation to defend or indemnify York or Piotrowski against O'Brien's claims. Dkt. # 2. On August 22, 2011, O'Brien filed a second amended petition in the state court lawsuit adding direct claims against Foremost. Dkt. # 35-2. The Estate filed a motion to dismiss this case and argued that the issue of Howard's residence would be decided in the state court lawsuit. Dkt. # 11. The Court denied York's motion to dismiss. Dkt. # 20. The Court found that this case presented an issue that was not being litigated in the state court lawsuit as of July 12, 2011, and there was sufficient evidence to support an inference that O'Brien's attorney was engaging in jurisdictional gamesmanship to defeat federal jurisdiction. Id. at 7-9. The Court also rejected York's argument that the Oklahoma Declaratory Judgment Act, OKLA. STAT. tit. 12, § 1651 prohibited this Court from hearing this case. Id. at 6 n.3. O'Brien filed a motion to dismiss (Dkt. # 24) reurging the same grounds for dismissal, and her motion was also denied. Dkt. # 28.

---

[2]   The parties do not specify York's date of death, but plaintiff states that York died after O'Brien's state court lawsuit was filed. Dkt. # 15, at 1.

4

## II.

Summary judgment pursuant to Fed. R. Civ. P. 56 is appropriate where there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986); Kendall v. Watkins, 998 F.2d 848, 850 (10th Cir. 1993).  The plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. Celotex, 477 U.S. at 317.  "Summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'" Id. at 327.

"When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts. . . .  Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'"  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986) (citations omitted).  "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the [trier of fact] could reasonably find for the plaintiff."  Anderson, 477 U.S. at 252.  In essence, the inquiry for the Court is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."  Id. at 250.  In its review, the Court construes the record in the light most favorable to the party opposing summary judgment. Garratt v. Walker, 164 F.3d 1249, 1251 (10th Cir. 1998).

**III.**

Plaintiff asks the Court to find that plaintiff has no obligation to defend or indemnify the Estate or Piotrowski against O'Brien's claims, because Howard regularly resided in York's and Piotrowski's home and O'Brien's claims concerning Howard's death are excluded from coverage under the policy. O'Brien responds that there is a genuine dispute as to a material fact as to Howard's residence as of September 7, 2007, and plaintiff's motion for summary judgment should be denied.[3]

"The interpretation of an insurance contract is governed by state law and, sitting in diversity, we look to the law of the forum state." Houston Gen. Ins. Co. v. Am. Fence Co., Inc., 115 F.3d 805, 806 (10th Cir. 1997). In Oklahoma, interpretation of an insurance contract is a matter of law. Max True Plastering Co. v. U.S. Fid. and Guar. Co., 912 P.2d 861, 869 (Okla.1996). The insured has the burden of showing that his claim is covered under the policy. U.S. Fid. & Guar. Co. v. Briscoe, 239 P.2d 754, 756 (Okla. 1952) (noting that "the contractor must bring himself within the terms of the policy, before he can establish insurer's liability thereon"); see also Pitman v. Blue Cross & Blue Shield of Okla., 217 F.3d 1291, 1298 (10th Cir. 2000) ("the insured has the burden of showing that a covered loss has occurred"). Once the insured establishes coverage, "the insurer has the burden of showing that a loss falls within an exclusionary clause of the policy." Id. at 1298.

---

[3] O'Brien also reurges her arguments that the Court should refrain from exercising jurisdiction over this declaratory judgment action and that the Court is prohibited from resolving the factual issue of Howard's residency under § 1651. Dkt. # 35, at 12-16. The Court has previously denied two motions to dismiss on the same grounds, and the Court will not reconsider its previous rulings that it is proper for the Court to hear this case and that § 1651 does not bar consideration of the disputed factual issues in this case. See Dkt. ## 20, 28.

This case turns, in part, on the construction of the term "regularly resided" as used in the policy. Under Oklahoma law, an insurance contract should be construed according to the terms set out within the four corners of the document. First American Kickapoo Operations, L.L.C. v. Multimedia Games, Inc., 412 F.3d 1166, 1173 (10th Cir. 2005); Redcorn v. State Farm Fire & Cas. Co., 55 P.3d 1017, 1020 (Okla. 2002); London v. Farmers Ins. Co., Inc., 63 P.3d 552, 554 (Okla. Civ. App. 2002). If the terms of the contract are "unambiguous, clear and consistent, they are to be accepted in their ordinary sense and enforced to carry out the expressed intention of the parties." Roads West, Inc. v. Austin, 91 P.3d 81, 88 (Okla. Civ. App. 2004). A court should not create an ambiguity in the policy by "using a forced or strained construction, by taking a provision out of context, or by narrowly focusing on a provision." Wynn v. Avemco Ins. Co., 963 P.2d 572, 575 (Okla. 1998). A policy term will be considered ambiguous only if susceptible to more than one reasonable interpretation. Max True Plastering, 912 P.2d at 869. If an insurance contract contains an ambiguous term, the Court may refer to extrinsic evidence to interpret the insurance policy. Gable, Simmons & Co. v. Kerr-McGee Corp., 175 F.3d 762, 767 (10th Cir. 1999) (citing Pierce Couch Hendrickson Baysinger & Green v. Freede, 936 P.2d 906, 912 (Okla. 1997)). When construing an ambiguous term in an insurance contract, a court must consider "not what the drafter intended . . . but what a reasonable person in the position of the insured would have understood [the ambiguous provision] to mean." American Economy Ins. Co. v. Bogdahn, 89 P.3d 1051, 1054 (Okla. 2004).

Oklahoma courts have not considered whether "regularly resided" is ambiguous or unambiguous, but other courts have found that this language is ambiguous. Foremost Signature Ins. Co. v. Parker, 2007 WL 1863385, *2-3 (D.S.C. June 26, 2007); Vanguard Ins. Co. v. Racine, 568

7

N.W. 2d 156, 159 (Mich. App. 1997). In this case, "regularly resides" is not defined in the policy and the Court finds that it is susceptible to more than one reasonable interpretation. "Regularly resides" could mean that a person regularly lives at the residence but does not intend to reside there permanently, or it could have a more limited definition and refer only to persons intending to live at the residence on a permanent basis. The Court finds that "regularly resides" is ambiguous and that it should be construed in favor of the insured. Thus, plaintiff must show that Howard intended to permanently reside with York and Piotrowski at 15609 West Haskell Street for the exclusion in the policy to apply.

The Court has reviewed the evidence and finds that there is a genuine dispute as to whether Howard intended to permanently reside at York's home at the time of his death. Plaintiff has presented significant evidence showing that Howard was living and intended to remain living with York and Piotrowski as of September 7, 2007. The evidence shows that Howard was attending school in Sand Springs the week of his death, and there is no evidence showing that Howard had withdrawn his enrollment from Sand Springs Public Schools. The Osage County Sheriff's Office and DHS both listed Howard's permanent address as 15906 West Haskell Street in Sand Springs, and DHS' investigator clearly stated that Howard was living with York and Piotrowski at the time of his death. However, the Court may not disregard O'Brien's affidavit when ruling on a motion for summary judgment, and the Court must view the evidence in a light most favorable to the non-moving party. O'Brien states that she had removed Howard from York's home on September 1, 2007 and that Howard intended to live with her and enroll in school in Tahlequah. While the facts stated in O'Brien's affidavit seem somewhat implausible in light of other evidence, it is not the Court's function to weigh evidence or making findings as to O'Brien's credibility when ruling on

8

a motion for summary judgment. O'Brien's affidavit gives rise to a genuine dispute as to a material fact, and the Court must deny plaintiff's motion for summary judgment.[4]

**IT IS THEREFORE ORDERED** that Plaintiff's Motion for Summary Judgment and Supporting Brief (Dkt. # 34) is **denied**.

**DATED** this 13th day of July, 2012.

*[signature: Claire V. Eagan]*
CLAIRE V. EAGAN
UNITED STATES DISTRICT JUDGE

---

[4]  Given the weight of the evidence contradicting O'Brien's statements, the Court notes that plaintiff's motion for summary judgment is being denied solely because of the representations in O'Brien's affidavit, and the Court reminds O'Brien's counsel of their obligations under Fed. R. Civ. P. 11. If plaintiff is required to incur the expense of a trial and O'Brien's counsel has not conducted a reasonable investigation to verify O'Brien's statements, this could be an appropriate case for sanctions under Rule 11.